UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| LEZLIE J. GUNN,<br><br>　　　　　　Plaintiff(s),<br><br>　v.<br><br>HANS-PETER WILD,<br><br>　　　　　　Defendant(s). | Case No. 2:17-CV-72 JCM (GWF)<br><br>ORDER |

Presently before the court is defendant Hand-Peter Wild's motion to dismiss plaintiff's original complaint. (ECF No. 7). Plaintiff Lezlie Gunn did not file a response, and the time to do so has since passed.

Also before the court is defendant's motion to dismiss plaintiff's amended complaint. (ECF No. 13). Plaintiff filed a response (ECF No. 14), to which defendant replied (ECF No. 17).

Also before the court is plaintiff's motion for leave to file a second amended complaint. (ECF No. 32). Defendant filed a response (ECF No. 33), to which plaintiff replied (ECF No. 36).

Also before the court is plaintiff's motion to file a supplement to her response to defendant's motion to dismiss. (ECF No. 37). Defendant filed a response (ECF No. 39), to which plaintiff replied (ECF No. 40).

Also before the court is plaintiff's motion for leave to file supplemental evidence is support of plaintiff's opposition to defendant's motion to dismiss. (ECF No. 42). Defendant filed a response (ECF No. 44), to which plaintiff replied (ECF No. 45).

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

## I. Background

This action arises from the alleged breach of a Release and Settlement Agreement ("RSA"), as well as allegations that defendant is liable to plaintiff based on multiple tort-based claims. (ECF No. 11).

Defendant is a former citizen and resident of Germany, and is a current citizen and resident of Switzerland. (ECF No. 11 at 2). Plaintiff had a "personal and professional relationship" with the defendant for over thirty years. *Id.* at 2–3. On December 21, 2015, plaintiff and defendant entered into a RSA to "resolve the parties' rights and obligations related to other previously established claims, contracts, obligations[,] and long-standing agreements." *Id.* at 3. The RSA does not contain a forum selection clause.[1] (ECF No. 14-8). The RSA does contain a choice-of-law provision indicating that "[t]he Agreement shall be enforced in accordance with the laws of the State of Nevada . . . ." *Id.*

Defendant fulfilled part of the RSA when he wired $60 million dollars to plaintiff. (ECF No. 11 at 3). Plaintiff allegedly continued to fulfill her duties under the RSA while defendant purportedly failed to complete his terms of the contract. *Id.* at 4. Specifically, plaintiff alleges, *inter alia*, the following five breaches of the RSA: (1) "[defendant] failed to pay all of the agreed-upon expenses"; (2) "[defendant] ceased paying for plaintiff's medical insurance"; (3) defendant failed to pay $20 million dollars towards an education fund; (4) defendant failed to pay plaintiff's yearly gift amount; and (5) defendant "failed and refused to provide various items throughout the year to emergency service departments." *Id.* In June 2016, defendant allegedly acknowledged his breaches to the plaintiff in front of his German lawyer while sailing on a yacht in an unidentified location, and defendant promised to immediately cure the breaches. *Id.* at 5. However, plaintiff alleges that he has not cured the breaches. *Id.*

Beginning in April 2016, and continuing for several months, defendant attempted to have plaintiff sign a power of attorney. *Id.* The document was written in German and, despite plaintiff's

---

[1] Plaintiff alleges that both parties understood that Nevada would be the forum due to her Nevada residency, citizenship, and "lack of understanding of the German language or German or Swiss law." (ECF No. 14 at 8.). Additionally, plaintiff states that Nevada would be the forum because defendant did not require Switzerland to be the forum as with all of his other contracts. *Id.* Defendant disputes both of these assertions. *See* (ECF No. 13).

requests, defendant provided nothing more than a verbal translation. *Id.* at 6. Plaintiff did not sign the document. *Id.* At one point, defendant allegedly trapped plaintiff in his kitchen, demanded she sign the document, and then "attacked plaintiff in an attempt to end her life" when she refused to sign the document. *Id*. at 6–7.

Since the alleged attempt on plaintiff's life, defendant has purportedly taken several steps to have plaintiff sign the power of attorney and has "done nothing but terrorize plaintiff." *Id.* at 9–10. Defendant allegedly sent "extremely disparaging and vicious emails about plaintiff to her brothers" and to "hundreds of [plaintiff's] friends and coworkers." *Id.* at 11. Defendant has also allegedly "made non-stop false, vicious[,] and defamatory statements about plaintiff to countless people." *Id.* In October 2016, defendant informed plaintiff that he "was revoking the RSA." *Id.* at 7.

Another term of the RSA required defendant to return plaintiff's belongings to her upon plaintiff's request. *Id.* at 12. The belongings are allegedly valued at more than $10.4 million dollars. *Id.* Despite plaintiff's repeated requests for the return of her belongings, she "has no idea where the container is that holds her belongings." *Id.* Plaintiff alleges that defendant intimidated and coerced his employees to not comply with plaintiff's "reasonable" requests to return her property. *Id.*

Furthermore, plaintiff alleges that defendant is a holdover tenant on plaintiff's properties. (ECF No 11 at 13). Despite plaintiff's numerous requests, defendant allegedly "continues to occupy Plaintiff's properties without payment." *Id.* Defendant allegedly paid plaintiff in the past for occupancy. *Id*.

On January 7, 2017, plaintiff filed her initial complaint (ECF No. 1). On March 3, 2017, defendant filed a motion to dismiss for lack of personal jurisdiction and *forum non conveniens* (ECF No. 7). Plaintiff then amended her complaint on March 14, 2017. (ECF No. 11).

Plaintiff's amended complaint states the following eight causes of action: (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; (3) unjust enrichment; (4) fraudulent or intentional misrepresentation; (5) conversion; (6) defamation; (7) unreasonable publicity given to private facts; and (8) punitive damages under NRS 42.005. (ECF No. 11).

**James C. Mahan**
**U.S. District Judge**

- 3 -

On March 28, 2017, defendant filed a motion to dismiss the amended complaint for lack of personal jurisdiction and *forum non conveniens*. (ECF No. 13).

**II.    Legal Standard**

  *a. Personal jurisdiction*

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move to dismiss a complaint for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). To avoid dismissal under Rule 12(b)(2), a plaintiff bears the burden of demonstrating that its allegations establish a prima facie case for personal jurisdiction. *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Allegations in the complaint must be taken as true and factual disputes should be construed in the plaintiff's favor. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).

"When no federal statute governs personal jurisdiction, the district court applies the law of the forum state." *Boschetto*, 539 F.3d at 1015; *see also Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). Where a state has a "long-arm" statute providing its courts jurisdiction to the fullest extent permitted by the due process clause, as Nevada does, a court need only address federal due process standards. *See Arbella Mut. Ins. Co. v. Eighth Judicial Dist. Court*, 134 P.3d 710, 712 (Nev. 2006) (citing Nev. Rev. Stat. § 14.065); *see also Boschetto*, 539 F.3d at 1015.

An assertion of personal jurisdiction must comport with due process. *See Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 672 (9th Cir. 2012). Two categories of personal jurisdiction exist: (1) general jurisdiction; and (2) specific jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–15 (1984); *see also LSI Indus., Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000).

General jurisdiction arises where a defendant has continuous and systematic ties with the forum, even if those ties are unrelated to the litigation. *See Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1171 (9th Cir. 2006) (citing *Helicopteros Nacionales de Columbia, S.A.*, 466 U.S. at 414–16). "[T]he plaintiff must demonstrate the defendant has sufficient contacts to constitute the kind of continuous and systematic general business contacts that approximate physical presence." *In re W. States Wholesale Nat. Gas Litig.*, 605 F. Supp. 2d 1118, 1131 (D. Nev. 2009) (internal quotation marks and citations omitted). In other words, defendant's affiliations with the

forum state must be so "continuous and systematic" as to render it essentially "at home" in that forum. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 760–61 (2014).

Specific jurisdiction arises where sufficient contacts with the forum state exist such that the assertion of personal jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co.*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The Ninth Circuit has established a three-prong test for analyzing an assertion of specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). "The plaintiff bears the burden of satisfying the first two prongs of the test. If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Id*. (citations omitted).

b. *Leave to amend*

Federal Rule of Civil Procedure 15(a) provides that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The United States Supreme Court has interpreted Rule 15(a) and confirmed the liberal standard district courts must apply when granting such leave. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Specifically, the Supreme Court explained:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman*, 371 U.S. at 182.

. . .

. . .

James C. Mahan
U.S. District Judge

**III.     Discussion**

   *a.  Motion to dismiss the original complaint*

Defendant filed a motion to dismiss plaintiff's complaint. (ECF No. 7). Thereafter, plaintiff filed an amended complaint. (ECF No. 11). Defendant then filed a motion to dismiss the amended complaint. (ECF No. 13). Given this procedural history, the court will deny defendant's motion to dismiss the original complaint as moot.

   *b.  Motion to dismiss amended complaint*

In defendant's motion to dismiss plaintiff's amended complaint, defendant argues that dismissal is appropriate pursuant to Federal Rule of Civil Procedure 12(b)(2) because the court lacks personal jurisdiction. (ECF No. 13). Defendant argues in the alternative that the court should dismiss plaintiff's claims under the doctrine of *forum non conveniens*. *Id.*

   *i.    General jurisdiction*

As an initial matter, no general jurisdiction exists over defendant in Nevada. Plaintiff's amended complaint asserts "[u]pon information and belief, Defendant, Wild, is, and at all times relevant hereto, an individual, recently a citizen and a resident of the Country of Switzerland and previously a resident and citizen of the Country of Germany." (ECF No. 11). As defendant is a citizen of Switzerland, he is not "at home" in Nevada. *See Daimler*, 134 S. Ct. at 760–61 (describing the general jurisdiction analysis for individuals).

Plaintiff argues that defendant is "at home" in Nevada because of his semi-frequent travels, membership to a golf club, business dealings with the Nevada incorporated Wild Affiliated Holdings, Inc. ("WAH"). (ECF No. 11 at 7–9). However, defendant's visits and his membership in a golf club are neither systematic nor continuous enough to establish him "at home" in Nevada. *See Tuazon*, 433 F.3d at 1171 (requiring systematic and continuous ties with the forum for general personal jurisdiction to exist).

That WAH is incorporated in Nevada is similarly insignificant. Plaintiff argues that because WAH was incorporated in Nevada and because defendant "conducted numerous business meetings for his Nevada company in Nevada," that general jurisdiction exists. (ECF No. 14 at 11–

12). Defendant conducting business in Nevada on behalf of WAH does not establish him as "at home."[2] *See Daimler*, 134 S. Ct. at 761.

Plaintiff further argues that defendant's contractual relationship with plaintiff (the RSA), which is in part an agreement to compensate plaintiff for consulting services she provided to WAH, subjects defendant to general personal jurisdiction in Nevada. (ECF No. 14 at 11–12). Plaintiff also points to the choice-of-law provision in the RSA as suggestive of defendant's consent to a Nevada court exercising general personal jurisdiction over him. But merely executing a contract with ties to a state will not subject a party to general personal jurisdiction in that state. *See Daimler*, 134 S.Ct. at 761.

Plaintiff also contends that defendant should be considered an automatic resident of the United States for taxation purposes based on the amount of time defendant spent in the United States in years prior to 2014. (ECF No. 14 at 12). As defendants note, this simply has no bearing on whether defendant should be subject to general jurisdiction in Nevada. (ECF No. 17 at 4) (citing *Daimer*, 134 S.Ct. at 761).

Finally, plaintiff contends that defendant maintained a Nevada-based cell phone for twelve years as well as bank accounts in Nevada for his Nevada companies. (ECF No. 14 at 12). Plaintiff further alleges that defendant is a holdover tenant on plaintiff's properties in Nevada. *Id.* at 13. Even when aggregated together with all of plaintiff's other allegations, these alleged facts do not demonstrate that plaintiff is essentially *at home* in Nevada.[3]

   *ii.   Specific jurisdiction*

Accordingly, to withstand dismissal under rule 12(b)(2), plaintiff must demonstrate that her allegations establish a prima facie case for specific jurisdiction. *See Boschetto*, 539 F.3d at

---

[2] Plaintiff's briefing confuses the tests for general jurisdiction and specific jurisdiction. This confusion is best highlighted by the final sentence of her briefing regarding general jurisdiction: "As a result of these minimum contacts, this Court has general personal jurisdiction over Defendant." (ECF No. 14 at 13). The minimum contacts analysis is not the appropriate method for determining whether a court may exercise general jurisdiction over a defendant. *See Daimler*, 134 S.Ct. at 761.

[3] Again, the minimum contacts analysis is not the test for general jurisdiction. *See Daimler*, 134. S.Ct. at 761).

1015. In other words, plaintiff must satisfy the first two prongs of the test for specific jurisdiction. *See Schwarzenegger*, 374 F.3d at 802.

In *Walden v. Fiore*, the Supreme Court underscored the importance of a defendant's own, direct contacts with the forum state in the specific-jurisdiction analysis. 134 S.Ct. 1115, 1126 (2014). The Supreme Court held that a Nevada district court could not exercise specific jurisdiction over a Georgia police officer who, while working as a deputized DEA agent at a Georgia airport, searched a Nevada-bound couple and seized almost $97,000 in cash representing legitimate gambling proceeds. *Id.* at 1119. The officer then drafted in Georgia what was alleged to be a false and fraudulent probable cause affidavit to support a potential forfeiture action for the seized funds. *Id.* at 1124.

The Supreme Court held that "it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State." *Id.* at 1126. The Court held that defendant's actions in Georgia "did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections." *Id.* at 1125. The Court continued, "[s]uch reasoning improperly attributes a plaintiff's forum connections to the defendant and makes those connections 'decisive' in the jurisdictional analysis. It also obscures the reality that none of [the officer's] challenged conduct had anything to do with Nevada itself." *Id.*

In sum, *Walden* clarified that "minimum contacts analysis cannot impermissibly [let] plaintiff's contacts with the defendant and forum . . . drive the jurisdictional analysis." *Id.* at 1125 (internal quotations omitted).

The Ninth Circuit addressed personal jurisdiction post-*Walden* in *Picot v. Weston*, 780 F.3d 1206 (9th Cir. 2015), reiterating that "personal jurisdiction analysis must focus on the defendant's contacts with the forum state, not the defendant's contacts with a resident of the forum." *Id.* at 1214. In *Picot*, plaintiff brought claims for declaratory judgment and tortious interference with a contract. *Id.* at 1210. The court held that a California court could not exercise specific jurisdiction over either claim. *Id.* at 1213, 1215. In considering plaintiff's claim for tortious interference with a contract, the court noted,

> [Defendant's] allegedly tortious conduct consists of making statements to Coats (an Ohio resident) that caused HMR (a Delaware corporation with offices in Ohio) to

> cease making payments into two trusts (in Wyoming and Australia). [Defendant] did all this from his residence in Michigan, without entering California, contacting any person in California, or otherwise reaching out to California.

*Id.* at 1215.

The Ninth Circuit treats purposeful availment and purposeful direction as separate methods of analysis. *Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 672 (9th Cir. 2012). Purposeful availment is for suits sounding in contract, whereas purposeful direction is for suits sounding in tort. *Schwarzenegger*, 374. F.3d at 802 (citing *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)).

### A. *Purposeful availment*

To meet the first two prongs of the purposeful availment analysis for specific jurisdiction, a plaintiff must show that defendant purposefully availed himself of the privilege of conducting activities within the forum state that give rise to plaintiff's claims. *Schwarzenegger*, 374 F.3d at 802. To determine this, the court will look at: "actions by the defendant *himself* that create a 'substantial connection' with the forum state," "affirmative conduct which allows or promotes the transaction of business within the forum state," and "prior negotiations and contemplated future consequences, terms of the contract and the parties' actual course of dealing." *Picot v. Weston,* 780 F.3d 1206, 1212 (9th Cir. 2015).

Courts are careful to distinguish defendant's affirmative conduct from tangential connections to a forum that do not satisfy the Ninth Circuit's express aiming requirements. *Id.* at 1213. "[R]andom, fortuitous, or attenuated" contacts are not sufficient, and "a contract alone does not automatically establish minimum contacts in the plaintiff's home forum." *Id.* "[T]he fact that a contract envisions one party discharging his obligations in the forum state cannot, standing alone, justify the exercise of jurisdiction over another party to the contract." *Id.* Further, a choice-of-law clause referencing a particular forum's laws does not automatically confer specific jurisdiction to the forum over a claim arising out of the contract. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 481–82 (1985).

1   Here, plaintiff alleges three claims sounding in contract: (1) breach of the release and settlement agreement; (2) breach of the implied covenant of good faith and fair dealing; and (3) unjust enrichment. (ECF No. 11).

Plaintiff argues in her briefing that specific personal jurisdiction is appropriate for various reasons: (1) defendant incorporated WAH in Nevada; (2) the contract allegedly involved compensation related to services plaintiff provided to WAH and defendant's other Nevada-based companies; (3) defendant would conduct company business in Las Vegas; (4) defendant "routinely conducted" management meetings in Las Vegas; and (5) defendant attended industry-related trade shows in Las Vegas. (ECF No. 14). Defendant responds that plaintiff's allegations do not meet the Ninth Circuit's exacting requirements for the exercise of personal jurisdiction in Nevada over claims related to the RSA. (ECF No. 13).

Here, the RSA, standing alone, does not support the exercise of jurisdiction in this case. Importantly, the RSA does not contain a forum selection clause, which, if present, would lend far more support to plaintiff's assertion that both plaintiff and defendant knew that Nevada would be the chosen forum for litigation.

Further, the RSA itself does not contain a single direct mention of compensation for services related to any Nevada-based company or activity. *See* (ECF No. 14-8). The RSA does not explicitly contemplate defendant transacting business pursuant to the RSA within the state of Nevada or making any payments pursuant to the RSA within the state of Nevada. *See id.* In sum, the RSA itself contains insufficient indicia that defendant attempted to meaningfully connect himself to the state of Nevada through the RSA such that it would be reasonable for a court to exercise jurisdiction over defendant for a claim arising out of the RSA. *See Picot*, 780 F.3d at 1213.

Furthermore, the choice-of-law clause in the RSA cannot by itself support the exercise of personal jurisdiction. *See Rudzewicz*, 471 U.S. at 481–82 (holding that a choice-of-law provision should not be ignored in the jurisdictional analysis, but when standing alone would be insufficient to support jurisdiction). And plaintiff's status as a Nevada resident does not automatically confer

personal jurisdiction over disputes arising out of a contract to which plaintiff is a party. *See id.* at 1214.

Plaintiff's other arguments to support the exercise of jurisdiction likewise fail to persuade the court that the exercise of specific jurisdiction would be proper in this case. Any alleged contacts defendant has with Nevada that relate to golf trips, trade shows, or management meetings do not relate to the RSA and to plaintiff's claims sounding in contract. These contacts are best classified as "random, fortuitous, or attenuated contacts," and do not demonstrate that this court can exercise personal jurisdiction over claims unrelated to these contacts. *See Picot*, 780 F.3d at 1213.

Finally, a court in Nevada cannot exercise jurisdiction over defendant as related to plaintiff's unjust enrichment claim, which is based on defendant's alleged status as a holdover tenant.[4] The complaint does not reference the location of any properties where defendant is a holdover tenant, and therefore the complaint does not make out a *prima facie case* that specific jurisdiction exists over these claims. *See Schwarzenegger*, 374 F.3d at 802.

### B. Purposeful direction

For claims sounding in tort, the court considers purposeful direction, also known as the "effects test." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006).

The effects test requires that the defendant allegedly must have (1) committed an intentional act; (2) expressly aimed at the forum state; (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Wash. Shoe*, 704 F.3d at 673 (internal citations and quotations omitted). The key question is one of due process: would it be fair, based on defendants' contacts with Nevada, for them to expect to defend themselves in a Nevada court?

---

[4] In Nevada, an unjust enrichment claim cannot be based upon a valid, written contract. *See Leasepartners Corp. v. Robert L. Brooks Trust Dated Nov. 12, 1975*, 113 Nev. 747, 755–56 (1997) ("An action based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement."). Therefore, plaintiff's references to the RSA in her claim for unjust enrichment do not state a claim upon which relief can be granted.

Here, plaintiff brings four claims sounding in tort: (1) fraudulent or intentional misrepresentation; (2) conversion; (3) defamation; (4) unreasonable publicity given to private facts. (ECF No. 11).

As to plaintiff's cause of action for fraudulent or intentional misrepresentation, the only statement plaintiff alleges defendant made that would support the claim was a statement made while he was on a yacht in an unknown location. (ECF No. 11 at 5). Plaintiff's complaint does not establish a *prima facie* case for personal jurisdiction as to this claim, as there is no suggestion that such conduct was expressly aimed at the forum state. The mere possibility of injury to a forum resident is not enough to support the exercise of personal jurisdiction in this case. *See Walden*, 134 S.Ct. at 1125 ("minimum contacts analysis cannot impermissibly [let] plaintiff's contacts with the defendant and forum . . . drive the jurisdictional analysis.").

As to plaintiff's cause of action for conversion, plaintiff's complaint does not establish a *prima facie* case for personal jurisdiction over the claim. Although plaintiff alleges that the location of the container containing her belongings is unknown, plaintiff identifies the last known location of the container as being outside of the United States. *See* (ECF No. 11 at 12) ("Plaintiff contacted numerous employees of [defendant] to inquire as to when her container would arrive in the United States . . ."). Further, the RSA section that plaintiff alludes to in her complaint references "personal property from any and all of [defendant's] properties located in Europe. (ECF No. 14-8). A cause of action specifically addressed at defendant's alleged conversion of plaintiff's items that occurred outside of the United States does not support the exercise of personal jurisdiction over defendant in Nevada, even if defendant knew that plaintiff was a Nevada resident. *See Walden*, 134 S.Ct. at 1125 (holding that defendant's allegedly unlawful taking of plaintiffs' property in Georgia "did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections.").

Plaintiff's cause of action for defamation similarly does not support the exercise of specific jurisdiction over the claim by a Nevada court. Plaintiff's complaint alleges that defendant has made numerous disparaging, vicious, and defamatory comments to plaintiff's family, friends, colleagues and German journalists. (ECF No. 11). However, plaintiff's complaint does not

1 contain a single specific allegation that would connect defendant's conduct to Nevada in a meaningful way. Therefore, plaintiff's complaint does not support this court exercising specific jurisdiction over the claim. *See Picot*, 780 F.3d at 1214 (holding that "personal jurisdiction analysis must focus on the defendant's contacts with the forum state, not the defendant's contacts with a resident of the forum.").

Finally, plaintiff's cause of action for public disclosure of private facts does not support the exercise of personal jurisdiction in Nevada. The only direct reference to the cause of action comes on page 18 of the complaint.[5] This reference, which merely alleges that defendant unreasonably disclosed private facts regarding plaintiff without providing any further information, does not contain a jurisdictional hook to the state of Nevada. As the court has already noted, alleged injury to a forum resident is not enough without more to support specific personal jurisdiction. *See Walden*, 134 S.Ct. at 1125; *Picot*, 780 F.3d at 1214.

In light of the foregoing, the court finds that plaintiff has failed to establish a prima facie case of personal jurisdiction. *See Schwarzenegger*, 374 F.3d at 802. As plaintiff has failed to satisfy the first and second prong of the specific jurisdiction test, personal jurisdiction is not established in Nevada. *See id*. Accordingly, the court will grant defendant's motion to dismiss for lack of personal jurisdiction.

    *iii.    Forum non conveniens*

As the court holds plaintiff fails to establish personal jurisdiction over defendant, the court need not address defendant's arguments regarding *forum non conveniens*.

    *c.  Motions for leave to supplement*

Plaintiff filed two motions for leave to file supplemental evidence in response to defendant's motion to dismiss. Plaintiff hopes to offer evidence of (1) a declaration provided by defendant's attorney in a separate case; (2) emails from defendant's attorney in the separate case to defendant; (3) a letter relating to a charter flight in 2011; (4) an email correspondence relating

---

[5] Although paragraph 121 states that plaintiff repeats and realleges every prior allegation in the complaint as though set forth in her enumerated cause of action for unreasonable publicity, none of the prior paragraphs contain an allegation of unreasonable publicity given to private facts.

James C. Mahan
U.S. District Judge

to Indag Pouch Systems; (5) an email correspondence regarding contacting a tax consultant at Ernst & Young in Las Vegas. (ECF Nos. 37, 42).

The court will deny plaintiff's motions. As defendant notes in his response, none of this evidence weighs on the court's jurisdictional analysis, as it neither tends to establish that defendant is "at home" in Nevada nor tends to demonstrate sufficient minimum contacts to support specific jurisdiction.[6]

### d. Motion for leave to file an amended complaint

Plaintiff filed a motion for leave to amend her complaint. (ECF No. 32). Plaintiff attached to her motion a proposed second amended complaint. (ECF No. 32-1). Defendant's responded to the motion, arguing that this court should deny leave to amend as amendment would be futile. (ECF No. 33).

Here, the main dispute between the parties is whether amendment is futile. The primary point of contention in the parties' briefings concerns paragraph 104 of plaintiff's proposed second amended complaint. Paragraph 104 contains an allegation that defendant sent plaintiff's brothers an email in an attempt to turn the family against plaintiff. (ECF No. 32-1). Plaintiff offers this to support her claim for defamation.

Taking the allegation in the proposed second amended complaint as true, the court again holds that plaintiff has not demonstrated that this court can exercise specific jurisdiction over defendant regarding the defamation claim. The complaint never specifically alleges that defendant knowingly sent an email or any other correspondence to a Nevada resident. Further, plaintiff seemingly continues to argue that plaintiff's suffering of damages in Las Vegas, Nevada, as a result of defendant's conduct is enough to satisfy the Ninth Circuit's tests for specific jurisdiction. (ECF No. 32-1 at 19) ("Plaintiff has suffered damages in Las Vegas, NV as a result of [defendant's] breach."). It is not. *See Picot*, 780 F.3d at 1214.

As is illustrated above, the proposed second amended complaint suffers from the same deficiencies that defendant noted in his motion to dismiss. The proposed changes do not alter the

---

[6] As the court is denying plaintiff's motion on the grounds that the evidence is irrelevant, it will not consider defendant's alternative argument that the court should deny the motion because the proffered evidence is not newly discovered evidence.

James C. Mahan
U.S. District Judge

- 14 -

court's holding that personal jurisdiction does not exist over defendant in Nevada for the causes of action in plaintiff's complaint. Plaintiff has already attempted to allege causes of action over which the court can exercise personal jurisdiction twice to no avail. Further amendment is therefore futile. *See Foman*, 371 U.S. at 182. The court will deny plaintiff's motion for leave to amend.

### IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant's motion to dismiss plaintiff's original complaint (ECF No. 7) be, and the same hereby is, DENIED as moot.

IT IS FURTHER ORDERED that defendant's motion to dismiss plaintiff's amended complaint (ECF No. 13) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that plaintiff's first motion to supplement (ECF No. 37) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that plaintiff's second motion to supplement (ECF No. 42) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that plaintiff's motion for leave to file an amended complaint (ECF No. 32) be, and the same hereby is, DENIED.

The clerk shall enter judgment accordingly and close the case.

DATED January 18, 2018.

_____
UNITED STATES DISTRICT JUDGE